RECEIVED
IN ALEXANDRIA, LA.
JUN 15 2011
TONY R. MOORE, CLERK
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

CURTIS L. SMITH (D.O.C. #307909)     DOCKET NO. 11-CV-78; SEC. P

VERSUS                                JUDGE DEE D. DRELL

WARDEN LYNN COOPER, ET AL.            MAGISTRATE JUDGE JAMES D. KIRK

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Curtis L. Smith filed the instant civil rights complaint in forma pauperis and pursuant to 42 U.S.C. §1983. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (LDOC) and is currently incarcerated at the Avoyelles Correctional Center (AVC) in Cottonport, Louisiana. He complained that he was denied adequate medical care and seeks compensatory and punitive damages. Plaintiff named numerous defendants including former DOC Secretary Richard Stalder, present DOC Secretary James LeBlanc, Warden Lynn Cooper, Asst. Warden Myrna Cooper, Deputy Warden Gary Gremillion, Terry Woods, Peggy Taylor, Tammy LaCombe, Dr. Pacheco, Dr. Crawford, Dr. Hines, Dr. Vagnar, Linda Ramsey, and Louisiana State University Medical Center in Shreveport, Louisiana.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.

### *Factual Allegations*

Plaintiff alleges that on July 14, 2005, he was involved in a slip & fall accident in the dining area at AVC. Plaintiff was wheeled to the infirmary and provided an ice pack before being sent

back to his dorm. On March 21, 2006, Plaintiff was provided with a "medical seat" because of pain in the area of his tailbone. However, on March 22, 2006, the cushion was taken from Plaintiff. [Doc. #1,p.10] On May 2, 2006, Plaintiff finally received an x-ray. On May 26, 2006, Plaintiff made a sick call notifying the medical staff that he lost hearing in his right ear as a result of the slip and fall the year before "because of blood flow restriction from what is now determined to be the result of two Bulging Discs." [Doc. #1, p.10]

On June 3, 2006, Plaintiff was taken to the emergency room after being administered a "double dose of blood pressure medicine." [Doc. #1, p.11] Plaintiff stated that he had been suffering from a headache since April 14, 2006. He was supposed to be referred to a neurologist "in the future," but the appointment was cancelled. [Doc. #1, p.11]

Plaintiff states that he filed Administrative Remedy Procedures (ARPs) or informal letters on July 30, 2007, December 22, 2008, December 13, 2009, September 14, 2010, November 28, 2010, and December 16, 2010.

Plaintiff was written up on January 4, 2006 for a violation of Rule #30C - general prohibited behavior. [Doc. #1, p.45] Plaintiff states that the violation was for seeking medical attention for six months. [Doc. #1, p.12] He states that he made 140 sick calls over the past five years.

Plaintiff underwent an EMG on November 3, 2006, at an LSU medical facility in Alexandria, Louisiana.

Defendants blamed Plaintiff'S chronic sinus condition for his pain, but the pain was actually due to bulging and herniated discs. Plaintiff states that he never complained of his sinuses, and every time he went to the hospital, the defendants were actually directing the hospital regarding Plaintiff's care. [Doc. #1, p.14]

In an attached exhibit, Plaintiff states that he had surgery on August 3, 2010 to remove a bulging disc behind his neck. Plaintiff filed an ARP complaining about the delay in receiving his medical care and that his complaints had been ignored for five years. Plaintiff complains that "if all of these ex-rays [sic] cat scans, M.R.I.'s and E.M.G.'s" were properly administered, then the bulging discs would have been detected prior to June 25, 2010.

### Law and Analysis

### Supervisory Liability and Denial of ARPs

Plaintiff named several defendants due to their supervisory and administrative capacities. He claims that these supervisors were personally involved and acted with deliberate indifference by denying his administrative grievances. It is well-settled that, "Supervisory officials may be held liable only if: (I) they affirmatively participate in acts that cause constitutional deprivations or (ii) they implement unconstitutional policies that causally result in Plaintiff's injuries." Mouille v. City of Live

Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), *cert. denied,* 508 U.S. 951 (1993). "Vicarious liability does not apply to §1983 claims." Pierce v. Texas Dept. of Crim. Justice, Inst. Div., 37 F.3d 1146, 1150 (5th Cir. 1994), *cert. denied,* 514 U.S. 1107 (1995). That is, a supervisor is not automatically liable for the acts of others simply because he is their supervisor. "Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983), *cert. denied,* 464 U.S. 897 (1983). Moreover, a prisoner does not have a constitutional right to a grievance procedure at all, and he has no due process liberty interest in having his grievances resolved to his satisfaction. See Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Staples v. Keffer, 2011 WL 989818 (5th Cir. 2011). The denial of Plaintiff's A.R.P.s by the various supervisory defendants does not allege the violation of a constitutional right. Thus, the claims against former DOC Secretary Richard Stalder, present DOC Secretary James LeBlanc, Asst. Warden Myrna Cooper, and Linda Ramsey should be dismissed for failing to state a claim for which relief can be granted.

### *Delay in "Proper" Medical Care*

Plaintiff argues that if all his diagnostic tests (CT scans, x-rays, MRIs, etc.) had been "properly administered," then the bulging discs would have been detected prior to June 25, 2010. In order to maintain a viable claim for delayed medical treatment

there must have been deliberate indifference, which results in harm. <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993).

First, Plaintiff claims that Defendant Warden Lynn Cooper was aware of his medical condition and let it go unresolved for 4.5 years. However, according to his pleadings, Plaintiff made over 140 sick calls during a five year period, was seen by a number of doctors and nurses, and received treatment at hospitals in the LSU system. Warden Cooper is not a medical doctor, and it is clear that Plaintiff was receiving treatment during the 4.5 years. His complaints were not being ignored. Plaintiff's disagreement with the treatment received does not allege deliberate indifference by Warden Cooper.

Plaintiff claims that Dr. Singh, Medical Director of the DOC, was deliberately indifferent by "signing off" on medical responses. Plaintiff states that "all who sign or acknowledge the activity are to blame for the deliberate indifference..." This is simply not the law.

Likewise, Plaintiff claims that Deputy Gremillion "is directly responsible for every medical determination that is provided at this facility...." [Doc. #16, p.17] This is a conclusory allegation, with no support. His allegation that Gremillion was deliberately indifferent by "allowing medical to control for all these years without intervention or overriding their decisions" is without merit. Gremillion is not a medical doctor or medical

professional. Following the opinions of various medical professionals who examined Plaintiff does not show deliberate indifference by Gremillion.

Plaintiff presents no allegations of a denial of a constitutional right by Assistant Warden Myrna Cooper. He mentions the denial of grievances, but as stated above, he has no constitutional right have grievances resolved to his satisfaction.

Plaintiff alleges that Dr. Pacheco is liable because he did not send Plaintiff for an MRI at an earlier date. This single allegation does not allege deliberate indifference; it alleges a disagreement as to medical treatment. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997), citing Young v. Gray, 560 F.2d 201, 201 (5th Cir. 1977); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).

Plaintiff alleges that Dr. Crawford (the past medical director of Avoyelles Correctional), Dr. Hines, and Dr. Vajnar let Plaintiff's complaints go unanswered for 4.5 years. As noted above, Plaintiff made 140 sick calls in 5 years and received treatment at LSU hospital and at Avoyelles. He clearly disagrees with the treatment he received over those years, but presents no factual allegations as to Crawford, Hines, or Vajnar. He only claims that his complaints were "unanswered" for years until he received an MRI, and "surely, it was the defendant's actions or lack of actions" that caused Plaintiff's injuries. [Doc. #16, p.21-

22] This allegation is conclusory.

Plaintiff alleges that former nursing directors Terry Woods and Peggy Taylor and current nursing director Tammy LaCombe are responsible for making sure all offenders are properly diagnosed; because he believes he was misdiagnosed, he claims that these defendants are liable. However, neither an incorrect diagnosis nor the failure to alleviate a significant risk that an official should have perceived but did not will be sufficient to establish deliberate indifference. See Domino v. Texas. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

Plaintiff names the LSU hospital in Shreveport as a defendant. The LSU medical centers were established under the administration of the Board of Supervisors, and these medical centers cannot be distinguished from the Board of Supervisors, which is the operative arm of the medical center.[1]  Therefore, the correct defendant is the Board of Supervisors rather than the individual hospital. See Harris v. Louisiana State University Medical Center, 2006 WL 2054481, *1 (W.D. La. 2006).  However, the Board of Supervisors is an arm of the State of Louisiana and as such, is entitled to the protections of the Eleventh Amendment which bars a federal court from "entertain[ing] a suit brought by a citizen against his own State." Pennhurst State School & Hospital v. Halderman, 465 U.S.

---

[1] Article 8, section 7 of the Louisiana Constitution of 1974 created the Board of Supervisors and charged it with supervising and managing the institutions administered through its system.

89, 98 (1984)(citing <u>Hans v. Louisiana</u>, 134 U.S. 1 (1890)). The State of Louisiana has not waived this sovereign immunity. <u>See</u> <u>Edelman v. Jordan</u>, 415 U.S. 651, 673 (1974). In short, the LSU hospitals have sovereign immunity from Plaintiff's claims.

To the extent that Plaintiff names the various doctors that treated him within the LSU medical system, he also fails to state a claim. Even if Plaintiff could establish that the doctors were state actors for purposes of §1983 liability, there are no allegations of deliberate indifference by the doctors. If Plaintiff was in fact incorrectly diagnosed, that is insufficient to establish deliberate indifference. Neither an incorrect diagnosis nor the failure to alleviate a significant risk that an official should have perceived but did not will be sufficient to establish deliberate indifference. <u>See</u> <u>Domino v. Texas. Dep't of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001).

Ultimately, "Deliberate indifference is an extremely high standard to meet." <u>Domino v. Texas. Dep't of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir.2001). The plaintiff must establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." <u>Id.</u> (internal quotation marks and citation omitted). Thus, neither an incorrect diagnosis nor the failure to alleviate a significant risk that an official should have perceived

but did not will be sufficient to establish deliberate indifference. See id. Similarly, unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. See Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir.2006). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir.1995).

Here, by Plaintiff's own allegations, he has received treatment in the infirmary, x-rays, EMG, surgery, CT scans, and MRIs, as well as made 140 sick calls in four or five years. There are no allegations of deliberate indifference.

### *Conclusory Allegations / Legal Conclusions*

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir.1998).

Nevertheless, in order to be afforded the benefits of this assumption a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may

not simply rely on conclusory allegations. Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); see also Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir.1995).

Plaintiff presents only incorrect legal conclusions to substantiate his claims.

Accordingly, **IT IS RECOMMENDED** that Plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief can be granted under 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)© and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the**

date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, **except upon grounds of plain error**. See Douglas v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this 15th day of June, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE